UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 3:24-cr-00188** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **AUDLEY ALEXANDER** | **MAGISTRATE JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS INDICTMENT (the "Motion") filed by Defendant, Audley Alexander ("Defendant" or "Alexander") on October 15, 2024. [Doc. 15]. Alexander moves to dismiss Count One of the Indictment that charges Defendant with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The government filed an Opposition on November 1, 2024, and amended its Response on November 7, 2024. [Docs. 20, 25].

### BACKGROUND

On September 4, 2024, a federal grand jury returned a one-count Indictment charging Defendant with violating 18 U.S.C. § 922(g)(1) by possessing a 9mm pistol and ammunition after being convicted of four separate felony offenses. [Doc. 1]. Defendant's prior felony convictions include: (i) Attempted Possession with Intent to Distribute Marijuana, [Doc. 25-1], (ii) Aggravated Battery, which resulted in a Protective Order, [Doc. 25-2, pp. 1, 4-7], (iii) Possession of a Firearm by a Convicted Felon, [Doc. 25-3], and (iv) Attempted Possession of a Firearm by a Felon. [Doc. 25-4].

## LAW AND DISCUSSION

Defendant's Motion asserts that § 922(g)(1) violates the Second Amendment as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022), as clarified by *United States v. Rahimi,* 144 S. Ct. 1889, 219 L.Ed.2d 351 (2024). Alexander also points the Court to the recent Fifth Circuit case of *United States v. Diaz,* 116 F.4th 458 (5th Cir. 2024), which describes the proper framework under which district courts are to consider "as-applied" challenges to charges brought under 18 U.S.C. § 922(g)(1). [Doc. 15-2].

In opposition, the government contends that the nature of the Defendant's prior convictions defeats his as-applied challenge under applicable law. [Doc. 25, p. 3]. For Defendant's Aggravated Assault and drug convictions, the government relies on the Fifth Circuit's analysis in *Diaz,* 116 F.4th 458. *Id.* at pp. 3-4. Relevant to the Defendant's prior felony drug conviction, the government argues that disarming drug dealers comports with our nation's history and tradition of firearm restrictions, pointing the Court to founding era laws punishing the trafficking of contraband. *Id.* at pp. 5-8. The government also urges that the underlying facts of the instant case show that Defendant is a dangerous offender. *Id.* at p. 10. In the alternative, the government contends that Defendant's Protective Order related to his Aggravated Battery conviction and parole conditions provide a separate basis for the lawful restriction of his Second Amendment rights. *Id.* at pp. 7-8.

## I. *Legal Standard*

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" *United States v. Wilson,* 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## II. *Governing Second Amendment Law*

In *Bruen*, the United States Supreme Court set forth a two-step framework for Second Amendment constitutional challenges. *Bruen*, 597 U.S. at 24. First, "*Bruen* requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." *Wilson,* 2024 WL 4436637, at *4 (citing *Bruen*, 597 U.S. at 24). *Second*, "the burden […] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (citing *Bruen*, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" *Diaz*, 116 F.4th at 467 (citing *Bruen*, 597 U.S. at 30). In determining if regulations are relevantly similar under the Second

Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.

### III. *Section 922(g)(1) is Constitutional as Applied to Defendant*

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear in *Diaz* that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment.[1] Therefore, the Court will only undertake the second step of the *Bruen* analysis.

In analyzing the second prong, the Court first must determine whether there are historical analogs that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. *See Bruen*, 597 U.S. at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* Court relied on three categories of historical analogues: (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies,[2] (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms,[3] and (iii) the colonial-

---

[1] "The government also raises the familiar argument that *Diaz* is not among 'the people' protected by the Second Amendment. We disagree. […] *Diaz's* status as a felon is relevant to our analysis, but it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Diaz*, 116 F.4th 458, 466–67 (5th Cir. 2024) (citing *Bruen*, 597 U.S. at 24).

[2] The Court notes that while the category of what was considered a felony at the time of our Nation's birth was "a good deal narrower," the government finds further support in the additional historical analogs discussed in *Diaz* which "more specifically target the [Defendant's] circumstances" as a violent offender. *Diaz*, 116 F.4th at 468 (citing *Lange v. California*, 594 U.S. 295, 311, 141 S. Ct. 2011, 210 L.Ed.2d 486 (2021)).

[3] "The Pennsylvania address suggested that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.' […] Massachusetts's proposed

era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment." *Id.* at 467, 468, 470. Importantly, in all three categories of analogues discussed in *Diaz*, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

Applying this precedent to the instant case, the historical analogs discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals viewed to be violent or a threat to public safety.[4] These analogs demonstrate a longstanding "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902.

Here, at least one of Defendant's underlying predicate crimes – Aggravated Battery – establishes the requisite nexus to public safety.[5] Moreover, this conviction

---

amendment said that the Constitution authorized 'the people of the United States, who are peaceable citizens, [to keep] their own arms.'" *Diaz*, 116 F.4th at 470 (citing BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665, 681 (1971)).

[4] The *Diaz* court explained that historical laws authorizing capital punishment and estate forfeiture as consequences of felonies were "justified by the need to adequately punish felons, deter reoffending, and *protect society from those proven untrustworthy to follow the law*." *Diaz*, 116 F.4th at 469. (Emphasis added). Similarly, the *Diaz* court found that the proposals from state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* Lastly, the *Diaz* court discussed the Supreme Court's finding in *Rahimi* that "going armed" laws punished "those who had menaced others with firearms" because such actions "disrupted the 'public order' and 'le[d] almost necessarily to actual violence.'" *Id.* at 470 (citing *Rahimi*, 144 S. Ct. at 1900-01).

[5] Defendant was convicted of Aggravated Battery under La. R.S. 14:34: "Aggravated battery is a battery committed with a dangerous weapon." "Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33. The Bill of Information filed

resulted in a protective order. [Doc. 25-2, p. 4-7]. This clearly places Defendant into the category of those who "present a credible threat to the physical safety of others." *Rahimi,* 144 S. Ct. at 1902. Like in *Diaz*, the purpose behind the enforcement of § 922(g)(1) against this Defendant is "relevantly similar to that of the [historical analogs]: to deter violence and lawlessness."[6] *Diaz*, 116 F.4th at 469. Therefore, the Court finds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against the Defendant in the instant Indictment.

Lastly, for good measure, the Court notes that courts across the country have held § 922(g)(1) constitutional as applied to defendants with the same or similar predicate convictions as Alexander. *See United States v. Vano*, 2024 WL 4202386, at *10 (D. Kan. Sept. 16, 2024) (finding that § 922(g)(1) was constitutional as applied to a defendant previously convicted of Aggravated Battery, Aggravated Assault, and Aggravated Domestic Battery). *See also United States v. Leslie,* 2024 WL 1718062, at *6 (E.D. Pa. Apr. 22, 2024) (same for predicate conviction of Aggravated Assault). *See also United States v. Polk,* 2024 WL 4216039 (S.D. Ind. Sept. 17, 2024) (same for predicate convictions of Dealing Cocaine, Robbery and/or Confinement and/or Theft, and Battery).

---

in that case indicates that Defendant used a kitchen knife in assaulting the victim. [Doc. 25-2, p. 1].

[6] "The precursor to § 922(g)(1) […] was enacted to 'bar possession of a firearm from persons whose prior behaviors have established their violent tendencies.'" *Diaz*, 116 F.4th at 469 (citing 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana)).

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that the MOTION TO DISMISS INDICTMENT [Doc. 15] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 15th day of November 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE